**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**, |
| Plaintiff, |
| v. |
| **DEPARTMENT OF JUSTICE**, |
| Defendant. |

Case No. 1:17-cv-00410 (TNM)

## MEMORANDUM OPINION

The Electronic Privacy Information Center, or EPIC, claims a right under the Freedom of

Information Act to records from the Department of Justice about evidence-based assessment

tools that seek to predict the statistical probability of an individual's recidivism.  The Department

has identified relevant records in its possession but has withheld many records in whole or in

part, either as private personal information or as information protected by the presidential

communications and deliberative process privileges.  Because the Department has justified each

of the withholdings that EPIC challenges, the Department's Motion for Summary Judgment will

be granted and EPIC's Cross-Motion for Summary Judgment will be denied.

## I.      BACKGROUND

EPIC's Freedom of Information Act, or FOIA, request seeks five categories of records

related to evidence-based assessment tools, which can also be described as risk assessment tools:

1.  All validation studies for risk assessment tools considered for use in sentencing, including but not limited to, COMPAS, LSI-R, and PCRA.[1]
2.  All documents pertaining to inquiries for the need of validation studies or general follow up regarding the predictive success of risk assessment tools.

---

[1]  These are commercial risk assessment tools currently in use in criminal cases.  Compl. ¶ 9.

3. All documents, including but not limited to, policies, guidelines, and memos pertaining to the use of evidence-based sentencing.
4. Purchase/sales contracts between risk-assessment tool companies, included [sic] but not limited to, LSI-R and the federal government.
5. Source codes for risk assessment tools used by the federal government in pre-trial, parole, and sentencing, from PCRA, COMPAS, LSI-R, and any other tools used.

Compl. ¶ 14.

The Department of Justice identified and produced 359 pages of records, with some redactions on 128 of those pages to protect privileged information under FOIA Exemption 5 and private personal information under FOIA Exemption 6.  Decl. of Vanessa R. Brinkmann ISO Def.'s Mot. Summary J. (Brinkmann Decl.) ¶¶ 8, 14.  The Department withheld 2,363 pages in full under Exemption 5, claiming that the records enjoy the presidential communications privilege and the deliberative process privilege.  *Id.* ¶ 14.  One of the key withholdings is a document that the Department describes as a Predictive Analytics Report prepared for submission to the White House.  *Id.* ¶ 12.  This report was prepared "at the direction of the White House" after a 2014 White House report that tasked President Barack Obama's senior advisors with leading a comprehensive review of the effect of big data technologies, including the use of predictive analytics in law enforcement.  *Id.* ¶¶ 10-11.  The Department also withheld drafts, research, briefing material, and emails related to the Report.  *Id.* ¶ 15.  EPIC sued to challenge several of these withholdings.[2]  Now before the Court are Cross-Motions for Summary Judgment.[3]

---

[2] This Court has subject matter jurisdiction over EPIC's claims under 28 U.S.C. § 1331 because they arise under federal law.  *See also* 5 U.S.C. § 552(a)(4)(B) and (a)(6)(c)(i) (granting the United States District Court for the District of Columbia jurisdiction over FOIA claims).

[3] EPIC does not dispute the adequacy of the Department's search for responsive records or the permissibility of the Department's Exemption 6 withholdings.  It does contest the withholding of the Predictive Analytics Report, the related research and briefing material, and two emails.

## II.    LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). Thus, a FOIA defendant is entitled to summary judgment if it shows that there is no genuine dispute about whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To show that any unproduced documents are exempt from FOIA, an agency may file "affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).  An agency affidavit that addresses these points with "reasonably specific detail" provides sufficient grounds for summary judgment unless it is "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (giving agency declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims").  Courts review the applicability of FOIA exemptions *de novo*.  *King*, 830 F.2d at 217.  Courts decide the "vast majority" of FOIA cases on motions for summary

judgment.  *See Brayton v. Office of United States Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.    ANALYSIS

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).  Exemption 5 has been interpreted to include materials subject to the presidential communications privilege as well as materials subject to the deliberative process privilege.  *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

### A.  The Presidential Communications Privilege Protects the Department's Predictive Analytics Report

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), is the leading case in this Circuit on the metes and bounds of the presidential communications privilege.  That case held that the privilege protects "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential."  *Id.* at 744.  It is broad in that it "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones."  *Id.* at 745.  And it reaches beyond communications to which the President is a party.  *Id.* at 750.  But it does not reach past "communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate."  *Id.*  This is because the scope of the privilege must "be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected."  *Id.* at 752.

Narrow construction of the privilege helps to balance "the twin values of transparency and accountability of the executive branch on the one hand, and on the other hand, protection of the confidentiality of Presidential decision-making and the President's ability to obtain candid, informed advice." *Judicial Watch v. Dep't of Justice*, 365 F.3d at 1112.

The Department of Justice relies on the presidential communications privilege to withhold the Predictive Analytics Report in full.[4]   It explains that the White House "solicited and received" the Report from the Department.  Brinkmann Decl. ¶ 43.  More specifically, after the 2014 White House report that tasked the President's senior advisors with a comprehensive review of the effect of big data technologies, a senior White House advisor wrote a memorandum to the Attorney General providing action steps related to the review.  *Id.* ¶ 42.  At the direction of the White House, the Department's Office of Legal Policy prepared the Predictive Analytics Report.  *Id.*  And the Principle Deputy Assistant Attorney General of the Office of Legal Policy submitted the Report to the White House Counsel's Office.  *Id.*; *see also* Pl.'s Cross-Mot. Summary J. 23 (noting that the Department submitted the Predictive Analytics Report to then-Associate White House Counsel Kate Heinzelman).  I agree with the Department of Justice that this the Report enjoys protection from disclosure as a communication "solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate."  *See In re Sealed Case*, 121 F.3d at 750.

---

[4]  The Department also argues that the deliberative process privilege applies to the Report but concedes that, "[a]bsent the presidential communications privilege, the Report could be segregated."  Def.'s Reply ISO Mot. Summary J. 5.  Because I conclude that the presidential communications privilege applies to the document in its entirety, I need not decide whether the deliberative process privilege applies to the document in part.

But EPIC challenges this withholding on three grounds.  *First*, EPIC argues that the Department lacks the authority to invoke the presidential communications privilege unilaterally. In the context of discovery, Circuit precedent has not resolved "whether the privilege must be invoked by the President as opposed to a member of his staff." *In re Sealed Case*, 121 F.3d at 744 n.16.  Even if a member of the President's staff could invoke the privilege in discovery, the Department of Justice is an agency and not a presidential staff member.

But the question at hand is not whether an agency can invoke the privilege in discovery but whether an agency can invoke the privilege under FOIA Exemption 5.  Although the Circuit has cited cases from the discovery context to suggest that there may be narrow limits on who can invoke the privilege, it has expressly declined to decide what limits apply in the FOIA context. *Judicial Watch*, 365 F.3d at 1114.  And the Supreme Court has made clear that "discovery rules can only be applied under Exemption 5 by way of rough analogies."  *EPA v. Mink*, 410 U.S. 73, 86 (1973), *superseded by statute on other grounds*, Pub. L. No. 93-502 § 2, 88 Stat. 1561, *as recognized in Ray v. Turner*, 587 F.2d 1187, 1190-91 (D.C. Cir. 1978).

In *FTC v. Grolier, Inc.*, the Supreme Court determined that Exemption 5 protected documents from disclosure under FOIA even though a court had ordered the FTC to disclose those same documents in discovery.  462 U.S. 19, 27-28 (1983).  The Supreme Court explained that discovery allows a more nuanced consideration of case-specific facts than FOIA and that Exemption 5 must be interpreted as "a categorical rule" to effectuate FOIA's goal of "expediting disclosure by means of workable rules."  *Id.* at 28.  So any limitation on who may invoke the presidential communications privilege in discovery "does not automatically carry over into the Exemption 5 analysis." *Lardner v. Dep't of Justice*, 2005 WL 758267 at *7 (D.D.C. 2005).

Without Circuit authority to decide the question, the Court is persuaded by earlier decisions from this District that an agency has authority to invoke the presidential communications privilege when making FOIA Exemption 5 withholdings.  *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 80 (D.D.C. 2008) (holding that the Department of Justice could invoke the presidential communications privilege under FOIA).  In keeping with the Supreme Court's direction to apply Exemption 5 as a categorical rule, Judge Bates has refused to adopt an "analysis that yields a different outcome depending on the way in which a particular document is invoked." *Lardner*, 2005 WL 758267 at *8.  When an agency invokes the deliberative process privilege as grounds for withholding a document under Exemption 5, courts do not require that a high-level agency official invoke the privilege, even though they do require a high-level agency official to invoke the privilege in discovery.  *Id.* at *8.  This is because a categorical approach to the deliberative process privilege depends only "on the factual content and purpose of the requested document." *See Dow Jones & Co., Inc. v. DOJ*, 917 F.2d 571 (D.C. Cir. 1990).  Similarly, a categorical approach to the presidential communications privilege depends on the nature of the document and not on how the privilege is invoked. *Lardner*, 2005 WL 758267 at *6-10.[5]  Thus, the Court concludes that the Department has adequately invoked the privilege without any action by the President or his staff.

*Second*, EPIC argues that it is not clear which President can invoke the privilege to protect communications made during a prior administration.  Memo. ISO Cross-Mot. Summary

---

[5]  Requiring the White House to invoke the presidential communications privilege in FOIA cases would effectively burden it—and arguably the President himself—with the responsibility of reviewing voluminous FOIA requests even though Congress exempted the White House from FOIA obligations. *See id.* at *9-10; *see also* 5 U.S.C. § 552(a) (placing disclosure obligations on each federal "agency," a term that does not include the White House under the definition in 5 U.S.C. § 551(1)).  This also militates against EPIC's proposed approach. *Lardner*, 2005 WL 758267 at *9-10.

J. 22.  EPIC appears to view this as an alternative argument that could defeat summary judgment "even if the [Department] could invoke the privilege on behalf of the President without any apparent White House involvement."  *Id.*  But the Court has already determined that the limitations on who can invoke the privilege do not apply in the FOIA context and that the Department may invoke the privilege unilaterally based on the nature of the document in question.  Because Exemption 5 is a categorical rule that focuses on the document at issue rather than the way that privilege is invoked, EPIC's second argument also fails.

  *Third*, EPIC argues that the Department has failed to show that then-President Obama or any of his immediate White House advisers received the Predictive Analytics Report.  *Id.* at 22-23.  According to EPIC, the privilege does not extend to communications with an Associate White House Counsel.  *Id.* at 23.  But the case on which EPIC relies noted that even documents created by a legal extern at the request of two Associate White House Counsel enjoyed the protection of the presidential communications privilege.  *Judicial Watch*, 365 F.3d at 1117 (quoting *In re Sealed Case*, 121 F.3d at 758).  Although EPIC claims that the privilege applies only to communications to which the President or his immediate advisers are parties, it can also apply to communications involving "members of an immediate White House adviser's staff."  *In re Sealed Case*, 121 F.3d at 752.  Whether or not an Associate White House Counsel is "an immediate White House adviser," she is a member of the staff of the White House Counsel, who is certainly himself an immediate White House adviser.  So this argument also fails, and the Department may withhold the Predictive Analytics Report.

  **B.  The Deliberative Process Privilege Applies to the Other Challenged Withholdings**

  To fall within the scope of the deliberative process privilege, a document must be "both predecisional and deliberative."  *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  A

court considers a document "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Id.* But "agencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations." *Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010).

The Department of Justice invokes the deliberative process privilege to withhold under Exemption 5 research and briefing materials prepared by its own employees and by outside consultants. Memo. ISO Pl.'s Mot. Summary J. 10-12. The Department explains that the research materials are predecisional because they informed the Department's drafting decisions and decisions about what source materials to consult. Brinkmann Decl. ¶ 27. It also explains that these materials are deliberative because "they reflect the thought processes and judgment of [the Department's Office of Legal Policy] staff as they canvass and cull from a spectrum of available source materials, analyze the material, and distill it down for other [Office of Legal Policy] staff working on the study and report and as such, show the internal development of the Department's decisions." *Id.* ¶ 28. The Department's affidavit states that it cannot segregate the factual content from the deliberative content in these materials because the selection of source material "is itself revelatory of the deliberative process." *Id.* 30.

The Department also relies on the deliberative process privilege to withhold briefing materials that its staff used to prepare the Attorney General for a media interview and to inform internal Department staff about the Predictive Analytics Report in preparation for anticipated internal and external meetings. Brinkmann Decl. ¶¶ 31-32. The Department explains that these materials are predecisional because they inform decisions by the Department leaders who review them and deliberative because they convey the drafters' opinions and analysis. *Id.* ¶ 33. In other

words, briefing materials contain the drafter's research and recommendations and reflect the

drafter's assessment of what facts and issues are important and which do not matter. *Id.* ¶¶ 33,

35. The Department's affidavit states that it could not effectively segregate the factual and

deliberative content in the briefing materials "[b]ecause the selection of facts and source material

is itself a part of the deliberative process." *Id.* ¶ 35.

EPIC objects to the withholding of these materials on two grounds. First, EPIC objects

that the research and briefing materials are factual and so are not deliberative. Memo. ISO Pl.'s

Cross-Mot. Summary J. 13-16. Second, EPIC objects that the Department has not provided

sufficient grounds for treating research prepared by outside consultants as intra-agency records

subject to Exemption 5. *Id.* at 16-17. Neither objection prevents summary judgment for the

Department.

## 1. Disclosing the Factual Contents of the Withheld Documents Would Reveal the Department's Deliberative Process

EPIC acknowledges that an agency can withhold factual information if its disclosure

would inevitably reveal the government's deliberations but argues that the selection of source

material is not revelatory of the deliberative process as a matter of law. *Id.* at 14-15. In support

of this view, EPIC cites Circuit precedent that observes:

> Anyone making a report must of necessity select the facts to be mentioned in it;
> but a report does not become a part of the deliberative process merely because it
> contains only those facts which the person making the report thinks material. If
> this were not so, every factual report would be protected as a part of the
> deliberative process.

*Playboy Enters., Inc. v. DOJ*, 677 F.2d 931, 935 (D.C. Cir. 1982).

But the selection or organization of facts can be part of an agency's deliberative process

and so exempt from FOIA. *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513

(D.C. Cir. 2011). The deliberative process privilege protects a compilation of factual material

"assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Mapother v. DOJ*, 3 F.3d 1533, 1539 (D.C. Cir. 1993).  This is because "[t]he work of the assistants in separating the wheat from the chaff is surely just as much part of the deliberative process as is the later milling by running the grist through the mind of the administrator." *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974).  A decisionmaker using an assistant to winnow relevant facts from irrelevant facts is "similar in many ways to a judge's use of his law clerk to sift through the report of a special master or other lengthy materials in the record." *Id.* at 78.  It is part of the decisionmaker's deliberative process and not subject to public disclosure.  *Id.*

EPIC tries to distinguish *Montrose*, claiming that the sifting of information here is different because it is unrelated to any decision and involves facts that are not in the public record.  Reply ISO Pl.'s Cross-Mot. Summary J. 7.  But the research was prepared to influence the decisions that went into drafting the Predictive Analytics Report, and the briefing was prepared to influence decisions about the Report and about how to discuss it.  And whether facts are in the public record makes no legal difference.  *See Ancient Coin Collectors Guild*, 641 F.3d at 513 ("the legitimacy of withholding does not turn on whether the material . . . is already in the public domain").  The Department has submitted an affidavit stating that the research and briefing materials it seeks to withhold assemble relevant facts and disregard irrelevant facts, reflecting the judgment of Department employees and consultants who prepared the materials to help the Department decide what to report to the White House about evidence-based assessment tools.  Brinkmann Decl. ¶¶ 26-35.  This places the research and briefing materials within the scope of the deliberative process privilege absent contrary record evidence or evidence of agency bad faith.  *See Military Audit Project*, 656 F.2d at 738.

EPIC attempts to show bad faith in two ways.  First, it claims that "even if some of the factual material contained in the withheld pages were inextricably intertwined with deliberative material, it beggars belief that *not one single fact* in 345 pages could be disentangled and properly disclosed."  Memo. ISO Pl.'s Cross-Mot. Summary J. 15.  But EPIC's incredulity is not evidence and fails to prove that the Department has withheld reasonably segregable information. *See* 5 U.S.C. § 552(b)(9) (requiring agencies to release reasonably segregable portions of records after deleting information that falls within a FOIA exemption).  Second, EPIC attempts to show bad faith by claiming that the Department's redactions to two emails show that it has withheld information unjustifiably or, alternatively, that the Department can easily segregate factual and deliberative materials.  Memo. ISO Pl.'s Cross-Mot. Summary J. 15-16.  But this claim is also speculative and fails to overcome the presumption of agency good faith.[6]

Because EPIC has not overcome the presumption of good faith that the Department's affidavit enjoys, the Department's affidavit is enough to put the research and briefing materials within the scope of *Montrose* and *Mapother*.  Because the materials fall within the scope of *Montrose* and *Mapother*, the factual content in the materials is intertwined with the Department's deliberative process and properly withheld under Exemption 5.  And this defeats EPIC's objection that the Department should disclose the materials because they are simply factual.

---

[6]  More specifically, EPIC speculates that it is "unlikely" an email that says it contains "data points" could also contain a paragraph of "deliberations about how to respond to a particular news article" as the Department asserted in support of its redactions.  *Id.* at 15; *see also id.* Ex. H; Vaughn Index 29.  It also states that a different email's description of an attachment "appear[s]" to be an exhaustive description of the email's own contents, so that if the attachment contained "a review of the academics, their relevant articles, and what they say about their respective projects" then the email could not have contained a paragraph "reflecting advice and research."  Memo. ISO Pl.'s Cross-Mot. Summary J. 16; *see also id.* Ex. I; Vaughn Index 32.

2.   **Research by Outside Consultants Falls Within the Scope of the Consultant Corollary**

EPIC also argues that the Department's withholding of consultant research unjustifiably treats research prepared by outside consultants as intra-agency records subject to Exemption 5. *Id.* at 16-17.  But under controlling Circuit precedent, "When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an intra-agency memorandum for purposes of determining the applicability of Exemption 5."  *Nat'l Inst. Of Military Justice v. DOD*, 512 F.3d 677, 684 (D.C. Cir. 2008).  The Department's affidavit states that every withheld consultant research record "reflect[s] advice solicited by [the Department's Office of Legal Policy] as part of the drafting and research process for the Predictive Analytics Report." Brinkmann Decl. ¶ 27.

EPIC notes that the so-called consultant corollary applies only to consultants who are not advocating their own interests.  Memo. ISO Pl.'s Cross-Mot. Summary J. 16-17; *see also Competitive Enter. Inst. v. Office of Sci. & Tech. Policy ("CEI")*, 161 F. Supp. 3d 120, 133 (D.D.C. 2016).  The Department represents that the consultants "were not advocating for a government benefit at the expense of others; rather they were simply responding to and cooperating with [the Office of Legal Policy's] request for assistance."  Brinkmann Decl. ¶ 19. But EPIC says this is conclusory, like the agency representations in *CEI*.  Memo. ISO Pl.'s Cross-Mot. Summary J. 17.

The difference is that in *CEI* there was affirmative evidence suggesting that the consultant had a professional, reputational, and financial interest in promoting her theory of climate change to the agency that consulted her, while here there is nothing to overcome the presumption of good faith that the agency's declaration enjoys.  *See CEI*, 161 F. Supp. 3d at 133-

34.  The other cases that EPIC notes in passing also involved affirmative evidence of self-interest that the agency declarations did not address adequately.  *See COMPTEL v. FCC*, 910 F. Supp. 2d 100, 119 (D.D.C. 2012) (requiring evidence to support FCC's claim that a company it was investigating had given it disinterested advice); *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 26 (D.D.C. 2002) (rejecting agency's claim that Chile had given it disinterested advice about a trade agreement between Chile and the United States).  EPIC has identified no evidence suggesting that the Department has withheld records submitted by alleged consultants who were advocating their own interests.  So its second objection also fails.  The Department is entitled to summary judgment on its withholding of internal and consultant research materials.

### C.  EPIC Has Not Overcome the Presumption That the Department Disclosed Reasonably Segregable Information

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  The Department's affidavit states that the Department "conducted a line-by-line review of all of the records and released any portions thereof that were not protected by an applicable FOIA exemption, often redacting only portions of sentences or paragraphs . . . ." Brinkmann Decl. ¶ 46.  EPIC's efforts to overcome this presumption and the Department's affidavit mirror the arguments about the applicability of Exemption 5 that I have already rejected.  So the Court declines EPIC's invitation to conduct an *in camera* inspection of the records the Department has withheld and instead rely on the Department's affidavit and the unrebutted presumption that the Department disclosed all reasonably segregable materials. *Sussman*, 494 F.3d at 1117 (requiring evidence that the agency did not segregate to rebut presumption of regularity); *see also Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (noting

that *in camera* review burdens the courts, undermines the adversarial nature of FOIA litigation, and "should not be resorted to as a matter of course").

## IV.   CONCLUSION

For the reasons stated above, the Department of Justice's Motion for Summary Judgment will be granted and the Electronic Privacy Information Center's Cross-Motion for Summary Judgment will be denied.  A separate order will issue.


Dated: August 15, 2018                     _____
                                          TREVOR N. MCFADDEN, U.S.D.J.